ACCEPTED
13-14-00097-cv
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
1/20/2015 2:05:34 PM
DORIAN RAMIREZ
CLERK

**No. 13-14-00097-CV**

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
1/20/2015 2:05:34 PM
DORIAN E. RAMIREZ
Clerk

IN THE COURT OF APPEALS
FOR THE THIRTEENTH DISTRICT OF TEXAS
CORPUS CHRISTI

PHI, INC.
Appellant,

v.

DEREK LeBLANC,
Appellee

**APPELLANT'S REPLY BRIEF**

APPEAL FROM THE 24th JUDICIAL DISTRICT COURT
OF CALHOUN COUNTY, TEXAS
HONORABLE JUERGEN "SKIPPER" KOETTER, PRESIDING JUDGE

Steven D. Sanfelippo
State Bar No. 24027827
M. Ross Cunningham
State Bar No. 24007062
ssanfelippo@cunninghamswaim.com
rcunningham@cunninghamswaim.com
CUNNINGHAM SWAIM, LLP
7557 Rambler Road, Suite 200
Dallas, Texas 75231
Telephone:  214.646.1495
Facsimile:  214.613.1163

# TABLE OF CONTENTS

INDEX OF AUTHORITIES...............................................................................................iv

SUMMARY OF REPLY ...................................................................................................1

REPLY ............................................................................................................................2

   I.  The evidence was legally insufficient—or at a minimum factually insufficient—to support a finding that PHI proximately caused LeBlanc's injuries......................................................................................2

      A.  Evidence regarding the force of the actual landing was not sufficient to provide the jury with a framework for determining which, if any, of LeBlanc's injuries were caused by the rollover and subsequent water events. ..............................................................2

      B.  LeBlanc admits that the evidence, when measured against the instructions given, was insufficient to support a finding that any act or omission of PHI caused Leblanc's injuries. ....................................3

          1.  Leblanc failed to properly object to the trial court's definition of "occurrence in question," and therefore evidentiary sufficiency is measured in light of the trial court's instructions to the jury. .......................................4

          2.  Even if the issue were not waived, LeBlanc's injuries resulted from two separate occurrences, and were not the type of "indivisible injury" that would allow him to shift the causation burden of proof to PHI. ....................................5

          3.  LeBlanc did not introduce any evidence that the injuries he sustained as a result of the rollover and subsequent events were incapable of being divided from the injuries sustained as a result of the violent descent and emergency landing caused by the tail assembly failure. ....................................7

      C.  In light of LeBlanc's admission that the evidence is legally insufficient to support the causation finding under the applicable standard, PHI's factual insufficiency and excessiveness issues are moot. If they were not, PHI would be entitled to relief on those issues as well.........................................................................8

   II.  In the alternative, the judgment should be reversed and remanded. .............9

A. The trial court erred in refusing to submit the issue of whether Apical's flotation system was defectively designed. ...............................9

B. Remand is required based upon additional charge error. ......................12

C. The jury's failure to find Apical negligent is against the great weight and preponderance of the evidence. ..........................................13

III. The judgment on past medical expenses should be reversed and rendered. ...................................................................................................13

IV. LeBlanc is not entitled to the windfall he would receive if PHI is not given the $95,000 settlement credit to which it was entitled. ......................15

PRAYER ...........................................................................................................17

CERTIFICATE OF COMPLIANCE .................................................................18

CERTIFICATE OF SERVICE ..........................................................................19

iii

# INDEX OF AUTHORITIES

**Cases**

*Coats v. Penrod*
    61 F.3d 1113 (5th Cir. 1995) ...................................................................................6

*General Chem. Corp. v. De La Lastra*
    852 S.W.2d 916 (Tex. 1993) ...............................................................................17

*Goodyear Tire & Rubber Co. v. Edwards*
    512 S.W.2d 748 (Tex. Civ. App.−Tyler 1974, no writ) ......................................6

*Green Tree Fin. Corp. v. Garcia*
    988 S.W.2d 776 (Tex. App.—San Antonio 1999, no pet.) .................................12

*Haygood v. De Escabedo*
    356 S.W.3d 390 (Tex. 2012) ...............................................................................14

*In re B.L.D.*
    113 S.W.3d 340 (Tex.2003) ..............................................................................4, 5

*Landers v. East Tex. Salt Water Disp. Co.*
    248 S.W.2d 731 (Tex. 1952) ..................................................................................6

*Niche Oilfield Services, LLC v. Carter*
    331 S.W.3d 563 (Tex. App.—Houston [14th Dist.] 2011) ........................ 15, 16

*Osterberg v. Peca*
    12 S.W.3d 31 (Tex. 2000) .......................................................................................4

*Padrino Maritime, Inc. v. Rizo*
    130 S.W.3d 243 (Tex. App.—Corpus Christi 2004, no pet.) .............................17

*Red Sea Gaming, Inc. v. Block Invest. (Nev.) Co.*
    338 S.W.3d 562 (Tex. App.—El Paso 2010, pet. denied) ..................................13

*Thota v. Young*
    366 S.W.3d 678 (Tex. 2012) ..............................................................................4, 5

*Timpte Industries, Inc. v. Gish*
    286 S.W.3d 306 (Tex. 2009) ...............................................................................11

**Other Authorities**

Restatement (Second) of Torts § 433A............................................................... 5, 6, 8

**Codes**

TEX. CIV. PRAC. & REM. CODE § 41.0105.................................................................14

**SUMMARY OF REPLY**

LeBlanc implicitly admits two facts that are dispositive of this appeal: (1) that the evidence is legally insufficient to support a causation finding when evidentiary sufficiency is measured against the charge that was actually given to the jury; and (2) that the issue of whether Apical's flotation system contained a design defect was not subsumed in the negligence issue submitted to the jury. LeBlanc tries to get around these two dispositive facts by claiming that other reasons exist to support the judgment, but they fall woefully short of avoiding the only conclusion to be reached: that the evidence is insufficient to support the causation finding, and that the trial court erred in refusing to submit the design defect issue to the jury.

There are other reasons for reversal, or at least partial reversal. For example, PHI is entitled to relief on its factual insufficiency and charge error points. In addition, the trial court's past medical damages award is not supported by legally sufficient evidence, and the trial court erred in refusing to allow PHI a $95,000 settlement credit. But these issues are moot in light of PHI's entitlement to reversal and rendition, or at a minimum, remand based upon the causation and design defect issues. PHI therefore respectfully requests that the judgment be reversed and rendered in its favor, or at a minimum, remanded for a new trial.

1

## REPLY

**I.    The evidence was legally insufficient—or at a minimum factually insufficient—to support a finding that PHI proximately caused LeBlanc's injuries.**

LeBlanc claims the "causation finding can be upheld two independent ways": (1) the jury could have believed PHI's expert's testimony "that given the soft landing, [LeBlanc] suffered no injuries on impact" and therefore "all the injuries resulted from PHI's negligence (which caused the helicopter to roll over)"; and (2) LeBlanc's expert "explained that the crash, inversion, and wait to be rescued combined to cause an indivisible injury." (Br. at 9). LeBlanc's argument is flawed for multiple reasons.

**A.    Evidence regarding the force of the actual landing was not sufficient to provide the jury with a framework for determining which, if any, of LeBlanc's injuries were caused by the rollover and subsequent water events.**

First, LeBlanc's "soft landing" argument is a non sequitor. The fact that one witness hypothesized that a soft landing may not be sufficient to cause or exacerbate a spinal or disc injury does not mean LeBlanc met his burden of proving what actually did cause his specific injuries. On the contrary, LeBlanc testified that, as soon as the tail rotor failed "it felt like the helicopter was out of control…lots of vibrations and movements from left to right, up, down, just every angle you can think of, just kind of out of control." (5 RR 93). LeBlanc further testified that "[i]mmediately after all of this vibration and commotion and all of that [the

Helicopter] just took a violent nose dive and…headed straight towards the Gulf. (5 RR 93). LeBlanc provided no evidence that would negate these events from being a cause of his injuries. As a result, the jury was left with no evidence from which it could conclude which injuries, if any, were sustained after the landing.

Moreover, even if LeBlanc's "soft landing" argument were correct as to his physical injuries, it still could not support a finding of causation as to the mental anguish damages. If anything, it further supports the conclusion that LeBlanc's mental anguish was caused completely by events that occurred *before* the water landing. This conclusion is supported by LeBlanc himself, who testified that while he "thought [he] was going to die" as the Helicopter nose-dived toward the Gulf, upon surfacing in the Gulf of Mexico, he "thank[ed] God" he was still alive. (5 CR 93, 97-98).

### B. LeBlanc admits that the evidence, when measured against the instructions given, was insufficient to support a finding that any act or omission of PHI caused Leblanc's injuries.

LeBlanc does not even attempt to argue that the evidence is sufficient to support the jury's finding as measured against the charge actually given. Instead, he claims that the evidence must be measured against the instruction that he claims should have been given: "whether there is legally sufficient evidence to support the jury's finding of proximate cause, viewing the free fall, the inversion, and the wait in the Gulf to be rescued as one 'indivisible injury.'" (Br. at 18). Thus, LeBlanc

3

effectively acknowledges that PHI is entitled to reversal if evidentiary sufficiency is measured against the instructions actually given to the jury. Unfortunately for LeBlanc, that is the applicable standard.

> **1.** **Leblanc failed to properly object to the trial court's definition of "occurrence in question," and therefore evidentiary sufficiency is measured in light of the trial court's instructions to the jury.**

Unless a proper objection is lodged, sufficiency of the evidence is measured against the charge that was actually given to the jury, even if that charge was erroneous. *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000). In order to preserve error regarding the charge, a party must specifically object in sufficient detail to notify the trial court of the precise error. *Thota v. Young*, 366 S.W.3d 678, 691 (Tex. 2012); *In re B.L.D.*, 113 S.W.3d 340, 349 (Tex.2003).

Here, LeBlanc claims he objected to the court's definition of "occurrence in question." In support of his argument, he cites to the trial court's statement noting that it "overruled…*an* objection posed by the plaintiff to the definition of the occurrence in question". (Br. at 13). However, LeBlanc conveniently forgets to identify *what that objection was*. (Br. at 13).

LeBlanc lodged two objections to the definition: (1) that PHI was responsible for all of the injuries because it conducted a negligent pre-flight inspection and was therefore responsible for the entirety of the incident; and (2) because he believed "the actual wording" of the definition was "very problematic." (7 RR 15-18).

4

LeBlanc *did not* object on the ground he raises in this Court: that his injuries were indivisible.[1] As a result, LeBlanc waived his charge error complaint, and sufficiency of the evidence is therefore weighed against the instructions actually given. *Thota*, 366 S.W.3d at 691; *In re B.L.D.*, 113 S.W.3d at 349. And because LeBlanc does not even argue that the evidence is legally sufficient under that standard, PHI is entitled to reversal of the judgment, and rendition in its favor, or at a minimum, remand for a new trial.

> **2. Even if the issue were not waived, LeBlanc's injuries resulted from two separate occurrences, and were not the type of "indivisible injury" that would allow him to shift the causation burden of proof to PHI.**

LeBlanc relies upon Restatement (Second) of Torts § 433A for the proposition that, "[w]hen there is no basis for determining the contributions of multiple causes to a single injury, each wrongdoer is responsible for the entire 'indivisible' injury." (Br. at 14).

The commentary to Section 433A, however, confirms that LeBlanc's reliance is misplaced, as it makes abundantly clear that this principle does not apply to the type of successive injuries at issue here. *Id*. at cmt. c. In cases like this, if the injuries

---

[1] The only other portion of the record LeBlanc relies upon is the objection he lodged at the formal charge conference. (Br. at 13; 7 RR 198). As the record indicates, however, at the formal charge conference LeBlanc simply objected to the definition, but did not identify any grounds upon which the objection was based. (7 RR 198). Thus, his complaint regarding the trial court's definition of "occurrence in question" is waived.

are truly indivisible as LeBlanc now claims, then it is "the original wrongdoer [who] is liable for the additional harm caused by the intervening negligence of the later one, <u>while the latter is liable only for what he has himself caused</u>." *Id*.

The caselaw upon which LeBlanc relies is equally inapplicable. (Br. at 15). In both cases, the negligent acts of multiple defendants combined to cause a single event, which in turn caused the injuries. *See Coats v. Penrod*, 61 F.3d 1113, 1117 (5th Cir. 1995) (plaintiff injured when he was knocked to the ground by erupting fluid)[2]; *Landers v. East Tex. Salt Water Disp. Co.*, 248 S.W.2d 731, 731-32 (Tex. 1952) (Defendants' pipeline ruptured, causing oil and salt water to damage the plaintiff's property). These cases only apply where the defendants' negligence combines to cause "a single occurrence or transaction resulting in a single indivisible injury." *Goodyear Tire & Rubber Co. v. Edwards*, 512 S.W.2d 748, 750 (Tex. Civ. App.−Tyler 1974, no writ).

Here, on the other hand, there were <u>two</u> occurrences: the tail assembly failure which led to the sudden and violent nosedive of the Helicopter and subsequent water landing, and the float system failure, which led to the overturning of the helicopter. The record contained evidence that these two separate occurrence caused separate injuries. Take Leblanc's mental anguish, for example. In connection with the tail

---

[2] LeBlanc claims this case is governed by maritime law. (Br. at 15). LeBlanc waived the application of maritime law, however, by expressly disavowing its application. (1 CR 10, 26, 62, 80).

6

assembly failure and subsequent rapid and violent descent of the helicopter, he described a terrifying sequence of events in which he "thought [he] was going to die." (5 CR 93). In comparison, after the Helicopter reached the Gulf and he realized he was not going to die, he remembered "thanking God" he was alive. (5 CR 97-98). At that point, his main concern was for the safety of his cellphone. (5 CR 162-63). As this evidence illustrates, this case does not involve a single occurrence causing an indivisible injury, but two separate occurrences causing separate injuries.

3. **LeBlanc did not introduce any evidence that the injuries he sustained as a result of the rollover and subsequent events were incapable of being divided from the injuries sustained as a result of the violent descent and emergency landing caused by the tail assembly failure.**

Although LeBlanc now claims on appeal that his injury was indivisible, he did not present a shred of evidence at trial that his injury was incapable of being apportioned between the two separate events. His reliance upon the Restatement and the testimony of one of his experts does not solve that problem.

According to LeBlanc, the Restatement supports a finding that his physical injuries were incapable of being divided. (Br. at 16). The Restatement commentary LeBlanc relies upon notes that certain kinds of harm may, by their very nature, be incapable of practical division, such as a broken leg or a single wound. (Br. at 16). But as the illustrations make clear, one defendant is only responsible for the entirety

7

of the damage only where the actions of two or more result in a single occurrence causing that indivisible injury. Restatement (Second) of Torts § 433A cmt i.

LeBlanc's reliance upon his expert's testimony is equally flawed. While his expert testified that all of LeBlanc's injuries resulted from all of the events, he <u>did not</u> testify that all of LeBlanc's injuries were caused by the rollover and subsequent events. (4 RR 173). Nor did he testify that all of LeBlanc's injuries were incapable of being divided between the two events. As a result, contrary to LeBlanc's argument, there is nothing to support a finding that his injuries were indivisible. Thus, even if the issue had not been waived, which it unquestionably has been, the trial court did not err in limiting the jury's consideration to events occurring after the water landing.

**C. In light of LeBlanc's admission that the evidence is legally insufficient to support the causation finding under the applicable standard, PHI's factual insufficiency and excessiveness issues are moot. If they were not, PHI would be entitled to relief on those issues as well.**

In light of LeBlanc's admission, this Court need not reach PHI's factual insufficiency and excessiveness issues. But PHI would be entitled to relief on those issues as well.

First, contrary to LeBlanc's argument, the lack of evidence in the record that PHI did not pay the filing fee for its post-trial motions is irrelevant. LeBlanc responded to the motions and never raised the filing fee issue, and the trial court

8

ruled on the motions. (7 CR 34, 94). Thus, LeBlanc's argument is, at best, waived. Thus, if the issues were not moot, as they have now become, PHI would be entitled to relief as set out in its opening brief. (App. Br. at 10-13).

**II.     In the alternative, the judgment should be reversed and remanded.**

If the judgment is not reversed and rendered, then for a number of reasons it should be reversed and remanded.

**A.     The trial court erred in refusing to submit the issue of whether Apical's flotation system was defectively designed.**

LeBlanc claims the record contains no evidence that could have supported a finding that the floats were defectively designed, and the trial court therefore properly refused to submit the issue to the jury. (Br. at 25-33). LeBlanc's arguments are borderline frivolous.

First, LeBlanc claims that the testimony of his own expert, Vaughn Ross—who testified unequivocally that Apical's flotation system was defectively designed—was conclusory and amounts to no evidence. (Br. at 127). As the record reveals however, Ross's ultimate conclusion that the flotation system contained a design defect was based upon several factors established by the evidence, including the facts that: (1) the old design utilized port fittings that were of identical size, and therefore could very easily be connected improperly; (2) the new design utilized different sized fittings such that the incident that occurred in this case could not have happened; (3) the new design eliminated the defect; and (4) had the new design been

9

utilized in the accident Helicopter, the issue that led to the flotation system failure in this case could not have occurred. (3 RR 123-28, 163). Ross' conclusion was further supported by evidence establishing that even the FAA concluded that Apical's design of the flotation system was defective. (9 RR Dx. 47 at 4). Ross' testimony was far from unsupported, and alone was sufficient to support the submission of the design defect issue to the jury. And contrary to LeBlanc's argument, Ross' testimony was not the only evidence supporting submission of a design defect issue to the jury. (6 RR 123-26; 9 RR Dx. 47 at 4-5).

LeBlanc next declares that "[t]his record contains no evidence of a safer alternative design," because there was "no evidence of the cost or feasibility of any alternative design". (Br. at 28). What better evidence of feasibility could there be than the fact that Apical actually incorporated the alternative design into its flotation system in response to this accident? (3 RR 125-128; 6 RR 125).

LeBlanc then claims there is no evidence in the record that the flotation system was unreasonably dangerous. (Br. at 29-31). On the contrary, the record contains evidence that the NTSB concluded that the old Apical design presented a "significant risk," and that "other operators" besides PHI were having the same issues of the flotation system hoses being misconnected. (9 RR Dx. 47 at 4-5). Moreover, evidence that the Helicopter in this case inverted because of an improperly installed flotation system and apparently caused LeBlanc more than a million dollars in

10

injuries is sufficient to support a question as to whether the old design was unreasonably dangerous. Indeed, it apparently was for LeBlanc.

Finally, LeBlanc claims the defect was obvious as a matter of law. LeBlanc's claim is nothing more than a jury argument based upon his version of the facts. Moreover, his reliance upon *Timpte Industries, Inc. v. Gish*, 286 S.W.3d 306 (Tex. 2009) is misplaced. As LeBlanc notes, the holding in *Timpte* was based upon the fact that the manufacturer "warned users" about the potential hazard—a warning that Apical never gave. (Br. at 33). Moreover, the defect here was the fact that the design allowed the hoses to be easily misaligned by even the most skilled and diligent mechanics. (9 RR Dx. 47). This is not the type of "open and obvious" defect that allows a manufacturer to skirt strict liability as a matter of law.

Perhaps most instructive is the fact that even the trial court believed there was sufficient evidence that the flotation system was defectively designed. The trial court did not refuse to submit the design defect issue based upon a lack of evidence, but because it concluded that the issue was already subsumed in the negligence question. (7 RR 23-24). As PHI established in its opening brief, that conclusion was incorrect (Br. at 20-22), and LeBlanc apparently agrees, as he does not attempt to argue otherwise.

In sum, the evidence supported submission of a design defect question to the jury, and the only reason it was not submitted was the trial court's erroneous belief

that the question was already subsumed in the negligence question. The trial court's conclusion was erroneous. The judgment should therefore be reversed and remanded.

**B.      Remand is required based upon additional charge error.**

Remand is also required based upon the trial court's failure to instruct the jury that it could not include in its damages award any amount for any condition that did not result from the occurrence in question, as defined by the jury charge. (Ap. Br. at 19-24).

LeBlanc claims the instruction was duplicative, and therefore refusing to give it was not harmful. (Br. at 23). The record establishes otherwise. The conditions for which LeBlanc sought damages resulted from at least three sources in addition to the "occurrence in question: (1) the tail rotor failure and events leading up to the emergency landing; (2) a car accident in 2003; and (3) LeBlanc's pre-accident divorce. (5 RR 93-98; 4 RR 94, 114, 118, 125-27; 5 RR 143-161;  Dx. 8, 50). Without the requested instruction for guidance, the jury awarded a substantial amount of damages that were not attributable to the occurrence in question. (5 RR 92-93). As a result, the trial court's error was harmful, and the Judgment should therefore be reversed and remanded. *See, e.g., Green Tree Fin. Corp. v. Garcia*, 988 S.W.2d 776, 784 (Tex. App.—San Antonio 1999, no pet.).

**C.    The jury's failure to find Apical negligent is against the great weight and preponderance of the evidence.**

LeBlanc claims PHI's complaint as to the sufficiency of the evidence of Apical's negligence "highlights the absurdity of its design defect contention." (Br. at 34). Actually, it highlights the harm to PHI caused by the failure to submit the design defect question. Without it, PHI was left to rely upon having to establish a claim with a more onerous burden of proof.

In any event, LeBlanc's argument fails to alter the necessary conclusion that the jury's finding as to Apical was against the great weight and preponderance of the evidence. First, as explained above, PHI did not waive the issue. Second, the record not only contained ample evidence of Apical's negligence, but that evidence is uncontroverted. (Ap. Br. at 23-24). As a result, the jury's finding that Apical was not negligent is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See, e.g., Red Sea Gaming, Inc. v. Block Invest. (Nev.) Co.*, 338 S.W.3d 562, 572-73 (Tex. App.—El Paso 2010, pet. denied).

**III.    The judgment on past medical expenses should be reversed and rendered.**

LeBlanc once again relies upon maritime law to avoid the necessary conclusion that the judgment should be reversed. This time, LeBlanc claims maritime law applies to the award of past medical expenses. (Br. at 36). First, LeBlanc expressly waived application of maritime law on numerous occasions. (1 CR 10, 26, 62, 80). Moreover, while LeBlanc mentioned maritime law in passing,

13

he argued the issue under Texas law. (6 RR 6-7, 11). LeBlanc never sought or obtained a ruling on his request to apply maritime law, and the trial court did not base its ruling on the application of maritime law, as it did with the settlement credit issue. (6 RR 11). Nor does LeBlanc argue on appeal that the trial court's reliance upon Texas law was erroneous. (Br. at 36). As result, to the extent maritime law would otherwise apply, LeBlanc waived its application.

LeBlanc's substantive argument is equally flawed. LeBlanc acknowledges that he was limited to recovering only those medical expenses "which have been or must be paid by or for the claimant." (Br. at 37-38); TEX. CIV. PRAC. & REM. CODE § 41.0105; *Haygood v. De Escabedo*, 356 S.W.3d 390, 398 (Tex. 2012). But although LeBlanc makes the conclusory statement that he satisfied this standard, he does not even attempt to support that conclusion. (Br. at 38). This is not surprising, as the evidence establishes otherwise.

In its opening brief, PHI laid out in detail the evidence of past medical expenses LeBlanc submitted, and why the evidence was insufficient to support an award of past medical expenses. (Ap. Br. at 26-27). The trial court awarded LeBlanc $175,871.26 in past medical expenses. (7 CR 91). Of that amount, $81,173.26 remains unpaid, and there is no evidence in the record that LeBlanc or anybody else is legally obligated to pay any of that amount. (9 RR Px. 114, 119, 125, 127, 139, 142). Of the remaining $94,698, there is no evidence that LeBlanc either paid any

14

portion of that amount, or remains legally obligated to reimburse whoever did pay those expenses. (9 RR 118, 121, 135, 144, 149). As a result, under Texas law, the evidence is legally insufficient to support the award of any past medical expenses to LeBlanc. Even if LeBlanc is credited for the $94,698 that was paid, which he should not be because there is no evidence that he either paid that amount or is liable for it, then at a minimum, there is legally insufficient evidence to support the award of the $81,173.26 that was unpaid, and at a minimum that portion of the award should be reversed and rendered. Either way, the evidence is legally insufficient to support an award of at least a portion of the past medical expenses, and the judgment should be reversed.

## IV.    LeBlanc is not entitled to the windfall he would receive if PHI is not given the $95,000 settlement credit to which it was entitled.

While LeBlanc points out that the trial court "concluded that Derek had not waived the application of maritime law," he conveniently avoids discussing *why* the trial court came to that conclusion. (Br. at 40). Nor does LeBlanc even mention the argument that ultimately convinced the trial court to rule the way it did. (Br. at 40; (11 RR 7-10). Not surprisingly, the trial court's conclusion is insupportable.

The trial court based its decision to deny PHI a $95,000 settlement credit exclusively upon its belief that Fourteenth Court of Appeals' decision in *Niche Oilfield Services, LLC v. Carter*, 331 S.W.3d 563 (Tex. App.—Houston [14th Dist.] 2011) was "controlling on the question," and required him to conclude that LeBlanc

15

did not waive application of maritime law. (11 RR 10). The trial court's—and LeBlanc's—reliance, however, was misplaced.

In *Niche*, the plaintiff plead his claim "under the common law of Texas and/or the general maritime law of the United States." *Niche*, 331 S.W.3d at 568. The *Niche* court held that this was sufficient to invoke maritime law as to the issue of what law applied to a settlement credit issue. *Id*. at 577.

The circumstances here are far different than in *Niche*. Contrary to the perception LeBlanc creates in his brief (Br. at 40), he did not simply plead maritime in the alternative as did the plaintiff in *Niche*—*he affirmatively disavowed its application*. In his pleadings, LeBlanc made clear that he did "not plead claims, if any, that could be preempted by federal law," and that he was "not asserting any federal law claims." (1 CR 80). Indeed, LeBlanc expressly waived the application of maritime law multiple times. (1 CR 10, 26, 62, 80).

Moreover, although LeBlanc points to his summary judgment response as an instance where he invoked maritime law, it actually establishes the opposite: LeBlanc did not even mention maritime law in connection with his negligence claims—he simply claimed that maritime law applied to the product liability and warranty claims, neither of which was the basis for the damages awarded to him. (5 CR 30). In addition, the statement LeBlanc made in his summary judgment motion was directly contrary to what he pled, and therefore could not have been sufficient

16

to invoke application of the law he expressly disavowed in his pleadings. *General Chem. Corp. v. De La Lastra,* 852 S.W.2d 916, 919–20 (Tex. 1993) (concluding that the application of maritime law can be waived); *Padrino Maritime, Inc. v. Rizo*, 130 S.W.3d 243, 249 (Tex. App.—Corpus Christi 2004, no pet.) ("Because state courts have concurrent jurisdiction over maritime actions, maritime law does not affect the court's jurisdiction over an action, but merely prescribes the substantive law governing the action. Accordingly, preemption by maritime law is a choice of law argument, which can be waived if not pled in defendant's answer.").

In sum, having made the express decision to disavow the application of maritime law in his pleadings, LeBlanc should not have been allowed to then rely upon maritime law to avoid application of a $95,000 settlement credit. The trial court erred in concluding otherwise and its judgment should be reversed and PHI should be granted a $95,000 settlement credit.

## **PRAYER**

For the reasons explained herein and in its opening brief, Appellant PHI, Inc. respectfully requests that his Court reverse the Judgment and render a take nothing judgment in favor of PHI, or in the alternative, reverse the Judgment and remand for a new trial, or in the further alternative, reverse the judgment in part, and render judgment that LeBlanc take nothing on his claim for past medical expense, and that

17

PHI is entitled to a $95,000 settlement credit, and for such other relief to which it is justly and equitably entitled.

Respectfully submitted,

*/s/ Steven D. Sanfelippo*
Steven D. Sanfelippo
State Bar No. 24027827
M. Ross Cunningham
State Bar No. 24007062
ssanfelippo@cunninghamswaim.com
rcunningham@cunninghamswaim.com
CUNNINGHAM SWAIM, LLP
7557 Rambler Road, Suite 200
Dallas, Texas 75231
Telephone: 214.646.1495
Facsimile: 214.613.1163
**ATTORNEYS FOR APPELLANT
PHI, INC.**

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i) of the Texas Rules of Appellate Procedure, the undersigned hereby certifies that based on the word processing software used to prepare this brief, the word count is 4,350.

*/s/ Steven D. Sanfelippo*
Steven D. Sanfelippo

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the above and foregoing instrument was forwarded pursuant to Rule 9.5 of the Texas Rules of Appellate Procedure and was served on January 20, 2015 on the following via Electronic service.

John C. Elliott
Fitzhugh & Elliott, P.c.
12727 Kimberley Lane, Suite 302
Houston, TX  77024-4053

Russell S. Post
John Adcock
Beck Redden LLP
1221 McKinney, Suite 4500
Houston, TX  77010

Cory Itkin
Arnold & Itkin
6009 Memorial Drive
Houston, Texas  77007

/s/ Steven D. Sanfelippo
Steven D. Sanfelippo