

CHIEF JUSTICE
JAMES T. WORTHEN

CLERK
CATHY S. LUSK

# TWELFTH COURT OF APPEALS

JUSTICES
SAM GRIFFITH
DIANE DEVASTO

CHIEF STAFF ATTORNEY
MARGARET HUSSEY

Wednesday, November 16, 2005

Mr. E. Lee Parsley
100 Congress Avenue
Suite 210
Austin, TX 78701

Mr. Jose E. De La Fuente
Lloyd, Gosselink, Blevins, Rochelle,
Baldwin & Townsend, P.C.
111 Congress Avenue, Suite 1800
Austin, TX 78701

**RE:** Case Number:          12-04-00142-CV
      Trial Court Case Number:   2001-2303-A

**Style:** Healthcare Cable Systems, Inc.

v.

The Good Shepherd Hospital, Inc., d/b/a Good Shepherd Medical Center

Enclosed is a copy of the Opinion issued this date in the above styled and numbered cause. Also enclosed is a copy of the Court's judgment.

Very truly yours,

CATHY S. LUSK, CLERK

By: *Katrina McClenny*

      Katrina McClenny, Chief Deputy Clerk

CC:      Hon. David Scott Brabham
           Hon. John Ovard
           Ms. Barbara Duncan

# NO. 12-04-00142-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *HEALTHCARE CABLE SYSTEMS, INC.,* | § | *APPEAL FROM THE 188TH* |
| *APPELLANT* | | |
| | | |
| *V.* | § | *JUDICIAL DISTRICT COURT OF* |
| | | |
| *THE GOOD SHEPHERD HOSPITAL, INC.* | | |
| *d/b/a GOOD SHEPHERD MEDICAL CENTER,* | | |
| *APPELLEE* | § | *GREGG COUNTY, TEXAS* |

*OPINION*

Healthcare Cable Systems, Inc. appeals the trial court's order granting The Good Shepherd Hospital, Inc. d/b/a Good Shepherd Medical Center's motion for summary judgment. HCS raises three issues on appeal. We reverse and remand in part and affirm in part.

BACKGROUND

On August 3, 1994, HCS and Good Shepherd entered into a Television Services Agreement whereby HCS would provide cable television services to Good Shepherd. The contract stated that the agreement term was to be for "a period of five (5) years commencing on the Operational Date and ending five years from and after such date."[1] "Operational Date" is defined by paragraph 2.4 of the contract as follows:

---

[1] Further, if neither party notified the other of its intent to discontinue the agreement at least ninety days prior to the expiration of the agreement, the agreement would automatically renew for a one year term.

The equipment and related parts, accessories, and supplies shall be installed at HCS's sole cost and expense, on or before ninety (90) days from the date HCS receives an executed counterpart of the Agreement from Hospital ("Operational Date") . . . .

The parties signed the agreement on or before October 31, 1994. HCS installed the necessary equipment and commenced service within weeks thereafter.

In December 1998, the parties executed an agreement containing identical language, but for the addition of an investor as a party to receive notice pursuant to the agreement. Thereafter, the business relationship between Good Shepherd and HCS deteriorated.

Good Shepherd filed suit on November 1, 2001 seeking a declaratory judgment that the operational date of the contract executed in December 1998 was the same date as it was for the 1994 contract—the date when the equipment was installed.[2] Before Good Shepherd's petition was served on HCS, HCS filed suit for breach of contract and served Good Shepherd with citation. In its petition, HCS alleged that the 1998 document had a five year term commencing on December 16, 1998, the date it was signed by Good Shepherd. The two cases were consolidated with Good Shepherd as plaintiff.

Good Shepherd filed a motion for partial summary declaratory judgment on August 12, 2003 and later sought to file additional evidence in support thereof. HCS responded to Good Shepherd's motion and objected to its supporting evidence and its motion for leave to file additional evidence. HCS also filed a motion for summary judgment as to its breach of contract counterclaim, to which Good Shepherd responded. In its motion, HCS argued that the operational date of the agreement occurred within ninety days from the date HCS received an executed counterpart of the contract. Ultimately, the trial court granted Good Shepherd's motion for summary declaratory judgment and denied HCS's motion for summary judgment on its breach of contract claim. In its order, the trial court stated that the operational date of the agreement between the parties was no later than October 31, 1994 and that the agreement expired no later than October 31, 2000. This appeal followed.

---

[2] At the time of its motion for summary judgment, Good Shepherd's third amended petition sought a declaration that the operational date was no later than October 31, 1994.

## SUMMARY JUDGMENT

In its first issue, HCS argues that the trial court erred in overruling its motion for summary judgment concerning its allegations of breach of contract. In a portion of its second issue, HCS argues that the trial court erred in granting Good Shepherd's motion for summary declaratory judgment. In reviewing a traditional motion for summary judgment, this court must apply the standards established in *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985), which are as follows:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.

3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*See id.*; *May v. Nacogdoches Mem'l Hosp.*, 61 S.W.3d 623, 628 (Tex. App.–Tyler 2001, no pet.). For a party to prevail on a motion for summary judgment, he must conclusively establish the absence of any genuine question of material fact and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). A movant must either negate at least one essential element of the nonmovant's cause of action or prove all essential elements of an affirmative defense. *See Randall's Food Mkt., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995); *see also MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). Since the burden of proof is on the movant, and all doubts about the existence of a genuine issue of a material fact are resolved against the movant, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). We are not required to ascertain the credibility of affiants or to determine the weight of evidence in the affidavits, depositions, exhibits, and other summary judgment proof. *See Gulbenkian v. Penn*, 151 Tex. 412, 252 S.W.2d 929, 932 (Tex. 1952). The only question is whether or not an issue of material fact is presented. *See* TEX. R. CIV. P. 166a(c).

Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would

3

preclude summary judgment. *See, e.g., City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678-79 (Tex. 1979). All theories in support of or in opposition to a motion for summary judgment must be presented in writing to the trial court. *See* TEX. R. CIV. P. 166a(c).

## CONTRACTUAL CONSTRUCTION

In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Id.* No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument. *Id.*; *Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193, 196 (Tex. 1962).

If the written instrument is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and the court will construe the contract as a matter of law. *Coker*, 361 S.W.2d at 393. An ambiguity may be either "patent" or "latent." *See CBI*, 907 S.W.2d at 520. A patent ambiguity is evident on the face of the contract. *Id.* A latent ambiguity arises when a contract that is unambiguous on its face is applied to the subject matter, and an ambiguity appears by reason of some collateral matter. *See id.*[3]

The interpretation of an unambiguous contract is a question of law, which we review de novo. *See MCI Telecomm. Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d 647, 650 (Tex. 1999). Ambiguity does not arise simply because the parties advance conflicting interpretations of the contract; rather, for an ambiguity to exist, both interpretations must be reasonable. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 861 (Tex. 2000). Yet when a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the contract becomes a fact issue. *See A.W. Wright & Assoc., P.C. v. Glover, Anderson, Chandler & Uzick, L.L.P.*, 993 S.W.2d 466, 470 (Tex. App.–Houston [14th Dist.] 1999, pet. denied)

---

[3] For example, if a contract called for goods to be delivered to "the green house on Pecan Street," and there were, in fact, two green houses on Pecan Street, a latent ambiguity would arise. *See id.* n.4.

4

(citing *Coker,* 650 S.W.2d at 394).

In interpreting a contract, we must presume that the parties thereto intended every clause to have some effect; therefore, we consider each part of the document with every other part of the document so that the effect and meaning of one part on any other part may be determined. *See* *Birnbaum v. Swepi LP,* 48 S.W.3d 254, 257 (Tex. App.–San Antonio 2001, pet. denied). Moreover, we give terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used such terms in a technical or different sense. *Id.* Finally, we enforce an unambiguous agreement as written. *Id.* We are not permitted to rewrite an agreement to mean something it did not. *Id.* We cannot change the contract simply because we or one of the parties comes to dislike its provisions or thinks that something else is needed in it. *Id.* Parties to a contract are masters of their own choices and are entitled to select what terms and provisions to include in or omit from a contract. *Id.*

The epicenter of our inquiry concerns the meaning of the term "Operational Date." When contracting parties set forth their own definitions of the terms they employ, the courts are not at liberty to disregard these definitions and substitute other meanings. *See Alexander v. Cooper,* 843 S.W.2d 644, 646-47 (Tex. App–Corpus Christi 1992, no writ); *Fulton v. Tex. Farm Bureau Ins. Co.,* 773 S.W.2d 391, 392 (Tex. App.–Dallas 1989, writ denied); *Hart v. Traders & Gen. Ins. Co.,* 487 S.W.2d 415, 417-18 (Tex. Civ. App.–Fort Worth 1972, writ ref'd n.r.e.). In the case at hand, the language employed in paragraph 2.4 of both the 1994 and 1998 agreements demonstrates that the parties intended to ascribe a particular meaning to the term "Operational Date." Paragraph 2.4 states as follows:

> The equipment and related parts, accessories, and supplies shall be installed at HCS's sole cost and expense, on or before ninety (90) days from the date HCS receives an executed counterpart of the Agreement from Hospital ("Operational Date") . . . .

HCS argues that Paragraph 2.4 defines "Operational Date" as a date within ninety days from the date HCS received an executed counterpart of the contract.[4] Good Shepherd contends that Paragraph 2.4

---

[4] Thus, HCS contends that the 1998 agreement created a new operational date when it was executed by Good Shepherd and received by HCS.

5

defines "Operational Date" as the date when the equipment was installed.[5]

Both parties argue at length as to how the parenthetical containing the term "Operational Date" refers to a certain portion of the preceding sentence. Neither party agrees as to which portion of this multi-clause sentence the parenthetical refers. We are aware of no rule of construction, grammar, or punctuation[6] that will permit us to determine precisely to what portion of the preceding sentence or other portion of a document a parenthetically-defined term refers. As such, from our reading of the sentence by which the parties intended to define the term "Operational Date," we conclude that the term is fairly susceptible of more than one construction. Given the language employed, neither HCS's interpretation of the c ontract nor that of Good Shepherd is any less reasonable.[7]

Therefore, the term "Operational Agreement," which the parties intended to have a distinct meaning apart from its plain meaning, *see Cooper,* 843 S.W.2d at 646-47, cannot be given a certain or definite legal meaning or interpretation. We conclude that the term "Operational Date" is ambiguous. Because the contract contains an ambiguity, there is an issue of fact concerning its interpretation. *See A.W. Wright & Assoc., P.C.,* 993 S.W.2d at 470. Therefore, we hold that the trial court erred in granting summary declaratory judgment in favor of Good Shepherd. *See* TEX. R. CIV. P. 166a(c). We further hold that the trial court did not err in overruling HCS's motion for

---

[5] Specifically, Good Shepherd contends that the operational date was the same for both the 1994 and the 1998 agreements.

[6] *See Gen. Fin. Servs. v. Practice Place,* 897 S.W.2d 516, 522 (Tex. App.–Fort Worth 1995, no writ) (citing *Jim Walter Homes, Inc. v. Schuenemann,* 668 S.W.2d 324, 330 (Tex. 1984)) ("A cardinal rule of contract construction is that courts are required to construe contracts in a manner that would give effect to the parties' intentions as revealed by the language used in the contract."); *Mattison, Inc. v. W.F. Larson, Inc.,* 529 S.W.2d 271, 273 (Tex. Civ. App.–Amarillo 1975, writ ref'd n.r.e.) ("The words, not the punctuation, are the controlling guide in construing a contract. If the meaning of the words is clear the court will interpret a contract . . . without regard to the punctuation marks or the want of them. While punctuation may be resorted to in order to resolve an ambiguity which it has not created, punctuation or the absence of punctuation will not of itself create ambiguity.").

[7] As Good Shepherd argues in response to a portion of HCS's second issue, extrinsic evidence is admissible to give the words of a contract a meaning consistent with that to which they are reasonably susceptible, i.e., to interpret contractual terms. *See CBI,* 907 S.W.2d at 521. However, a court may consider the parties' interpretations of the contract through extrinsic or parol evidence only after a contract is first determined to be ambiguous. *See Friendswood Dev. Co. v. McDade + Co.,* 926 S.W.2d 280, 283 (Tex. 1996); *Atl. Lloyds Ins. Co. v. Butler,* 137 S.W.3d 199, 210 (Tex. App.–Houston [1st Dist.] 2004, pet. denied). Thus, we have not considered the extrinsic evidence offered by Good Shepherd in support of its motion for summary judgment in our consideration of whether the term "Operational Agreement," as defined by the parties, is ambiguous.

summary judgment. *Id.* HCS's first issue is overruled, and its second issue is sustained in part.[8]

## ATTORNEY'S FEES

In its third issue, HCS argues that the trial court erred in awarding Good Shepherd $124,490.32 in attorney's fees. Good Shepherd's claim for attorney's fees was made in conjunction with its claim under the Declaratory Judgment Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 1997). We have held that the trial court erred in granting summary declaratory judgment in favor of Good Shepherd. Thus, it follows that its award of attorney's fees to Good Shepherd was likewise erroneous. HCS's third issue is sustained.

## DISPOSITION

Having sustained a portion of HCS's second issue as well as its third issue, we *reverse* the trial court's order granting Good Shepherd's motion for summary declaratory judgment and award of attorney's fees. Having overruled HCS's first issue, we *affirm* the trial court's order overruling HCS's motion for summary judgment on its breach of contract claim. We *remand* the cause to the trial court for further proceedings consistent with this opinion.

DIANE DEVASTO
Justice

Opinion delivered November 16, 2005.
*Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.*

(PUBLISH)

---

[8] Having held that the trial court erred in granting Good Shepherd's motion for summary declaratory judgment, we need not consider the portion of HCS's second issue concerning whether the trial court erred in admitting extrinsic evidence offered by Good Shepherd. *See* n. 6.



# COURT OF APPEALS

## TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### NOVEMBER 16, 2005

## NO. 12-04-00142-CV

**HEALTHCARE CABLE SYSTEMS, INC.,**
Appellant
V.
**THE GOOD SHEPHERD HOSPITAL, INC., d/b/a**
**GOOD SHEPHERD MEDICAL CENTER,**
Appellee

Appeal from the 188th Judicial District Court
of Gregg County, Texas. (Tr.Ct.No. 2001-2303-A)

THIS CAUSE came to be heard on the oral arguments, appellate record and the briefs filed herein, and the same being inspected, it is the opinion of this court that there was error in the judgment of the court below insofar as it granted Good Shepherd's motion for summary declaratory judgment and award of attorney's fees.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below wherein the trial court granted Good Shepherd's motion for summary declaratory judgment and award of attorney's fees be **reversed**. It is further ORDERED that the trial court's order overruling Healthcare Cable System's, Inc.'s motion for summary judgment on its breach of contract claim is hereby **affirmed** and this cause is **remanded** for further proceedings in accordance with the opinion of this court.

It is further ORDERED that the appellee, **THE GOOD SHEPHERD HOSPITAL, INC., d/b/a GOOD SHEPHERD MEDICAL CENTER,** pay all appellate costs in this cause, for all of which execution may issue; and that this decision be certified to the court below for observance.

Diane DeVasto, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and DeVasto, J.*