344

KINGSLEY PROPERTIES,
LP, Appellant,

v.

SAN JACINTO TITLE SERVICES OF
CORPUS CHRISTI, LLC, San Jacinto
Title Services of Texas, LLC, and
Mark Scott, Appellees.

NUMBER 13-15-00128-CV

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Delivered and filed September 22, 2016.

W. Craig Stokley, Palter, Stokley, Sims, PLLC, Dallas, TX, for Appellant.

Thomas F. Nye, Gault Nye & Quintana, John T. Flood, Flood & Flood, Corpus Christi, TX, for Appellees.

Before Justices Rodriguez, Benavides, and Perkes Opinion by Justice Rodriguez

## OPINION

Opinion by Justice Rodriguez

Appellant Kingsley Properties LP (Kingsley) appeals from a final judgment in favor of appellees San Jacinto Title Services of Corpus Christi, LLC; San Jacinto Title Services of Texas, LLC; and Mark Scott, the local president of San Jacinto (collectively, San Jacinto). By two issues, Kingsley contends that the trial court erred in: (1) awarding attorney's fees to San Jacinto, and (2) excluding expert testimony. We affirm in part and reverse and render in part.

### I. BACKGROUND

Kingsley sued San Jacinto complaining of a letter which Scott wrote and distribut-

ed in 2009 in pursuit of his bid for city council. The letter concerned the future of Kingsley's chief asset, a Corpus Christi golf course and country club called King's Crossing.

In 2005, Basil and Wendy Beck agreed to purchase King's Crossing for 2.65 million dollars. At the time of the acquisition, Basil and Wendy Beck were the sole members of the Kingsley limited partnership. The Becks executed an agreement which defined the terms of the transaction (the agreement), and they began running the golf course and country club themselves.

San Jacinto served as the escrow agent for the agreement and also performed some title services. At trial, Scott testified that he was a local vice president of San Jacinto at the time of the King's Crossing acquisition. It is undisputed that another vice president of San Jacinto signed the final page of the agreement, which stated that San Jacinto "acknowledges receipt of this Contract, executed by Buyer and Seller" and "agrees to treat the subject transaction in confidence and will not disclose the terms or conditions" of the agreement.

Residents of the surrounding neighborhood testified that after the Becks acquired King's Crossing, Basil Beck made certain management decisions that negatively affected the country club and golf course. Basil testified at trial that the country club's membership and financial condition began to decline after the purchase. In 2006, Kingsley sent a letter to local residents encouraging them to join (or rejoin) the country club, professing many new benefits. However, the letter also warned the residents that as the club's membership declined, King's Crossing was "not deed restricted" and there was "no obligation to keep this property as a country club and golf course," and that this "could open the door to undesirable development." The letter stated that "with-

out the golf course, your home's value would drop significantly by 15-35% or more." At trial, local residents testified that they perceived this letter negatively and had arguments with Basil Beck. According to the residents, Basil repeatedly asserted his intention to repurpose the golf course, using the land to develop homes, condos, or even a trailer park. Basil claimed that he had the unilateral right to re-plat the land for these other purposes. Club membership continued to decline in the coming years.

In 2009, Jim Robichaux, a local attorney who lived in the King's Crossing neighborhood, sent a memorandum to members of the Corpus Christi City Council, asking them to oppose the Becks' plan to convert the golf course. By that time, Scott had become the president of San Jacinto's regional operation and was running for city council. When he received a copy of Robichaux's memo, Scott sent a letter to Robichaux and other King's Crossing residents addressing concerns about the Becks' plan to convert the land (Scott's letter, or the letter). Among other things, Scott's letter stated that this "issue could come before the next City Council, as the proposed re-plat will require City Council approval." The letter stated that if elected, Scott would not support the "re-plat."

In 2010, Kingsley filed suit over the letter. Kingsley claimed business disparagement, alleging that the letter contained multiple false statements, including the following: that repurposing the golf course property would be "inconsistent with the master plan approved by the City many years ago," that Kingsley intended to "destroy the master plan," and that any proposed re-plat would require city council approval. Kingsley alleged that the letter caused a prospective sale of the property to fall through. According to Kingsley, Beck had previously entered a "handshake

deal" whereby an investor named Phillip Hurst was to purchase King's Crossing for five million dollars, but that when Hurst read Scott's letter, the deal fell through because of Hurst's concern over regulatory approval. Kingsley also claimed breach of contract—specifically, that by disclosing sensitive information regarding the 2005 agreement, Scott's letter had breached San Jacinto's agreement to keep the agreement confidential. Finally, Kingsley alleged that the actions above also constituted breach of a fiduciary duty and tortious interference with prospective business relations. San Jacinto denied all of the allegations and filed a counterclaim seeking attorney's fees in the event that it prevailed on Kingsley's breach of contract claim.

When Kingsley rested its case, the trial court granted a directed verdict against Kingsley on his breach of fiduciary duty claim. At trial, the jury found against Kingsley on its business disparagement, tortious interference, and breach of contract claims. The trial court entered a take-nothing judgment on all of Kingsley's claims and awarded San Jacinto attorney's fees for its defense of the breach of contract claim. This appeal followed.

## II. Attorney's Fees

At trial, San Jacinto claimed it was entitled to attorney's fees based on a provision in the agreement which generally stated that the "prevailing party" would be entitled to recover reasonable attorney's fees and costs. The trial court entered judgment on the jury's verdict that San Jacinto was entitled to $330,000 for representation in the trial court, $100,000 through the court of appeals, and $95,000 through vari-

ous stages of a Texas Supreme Court appeal.

On appeal to this Court, Kingsley does not contest that San Jacinto prevailed in the underlying contract dispute. Rather, Kingsley argues that San Jacinto was not a "party" under the meaning of the agreement. Kingsley contends that the prevailing party clause therefore did not apply.[1]

### A. Standard of Review and Applicable Law

When a contract is not ambiguous, the construction of the written instrument is a question of law for the court. *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650 (Tex.1999). In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument. *Seagull Energy E & P, Inc. v. Eland Energy, Inc.*, 207 S.W.3d 342, 345 (Tex.2006). To achieve this objective, courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex.2005). When contracting parties set forth their own definitions of the terms they employ, the courts are not at liberty to disregard these definitions and substitute other meanings. *Alexander v. Cooper*, 843 S.W.2d 644, 646–47 (Tex.App.–Corpus Christi 1992, no writ); *see Aldridge v.*

---

1. As an initial matter, San Jacinto argues that this issue is not preserved for our review because Kingsley did not lodge a specific objection in the trial court. We disagree. Kingsley lodged oral objections on this issue at the appropriate times, filed written objections to the proposed inclusion of this issue in the jury charge, and included this issue as a basis for its motion for new trial.

*Thrift Fin. Mktg., LLC,* 376 S.W.3d 877, 884 (Tex.App.–Fort Worth 2012, no pet.); *AMS Constr. Co. v. KHK Scaffolding Hous., Inc.,* 357 S.W.3d 30, 41 (Tex.App.–Houston [1st Dist.] 2011, pet. dism'd); *Healthcare Cable Sys., Inc. v. Good Shepherd Hosp., Inc.,* 180 S.W.3d 787, 791 (Tex.App.–Tyler 2005, no pet.).

▮ Generally, the party seeking to recover attorney's fees carries the burden of proof. *Musquiz v. Marroquin,* 124 S.W.3d 906, 913 (Tex.App.–Corpus Christi 2004, pet. denied). Attorney's fees are recoverable only if authorized by statute or by contract. *MBM Fin. Corp. v. Woodlands Operating Co.,* 292 S.W.3d 660, 669 (Tex.2009). Ordinarily, for the purposes of awarding attorney's fees, case law defines the term "prevailing party" as referring to a party who successfully prosecutes an action or successfully defends against an action on the main issue. *Pegasus Energy Grp., Inc. v. Cheyenne Petroleum Co.,* 3 S.W.3d 112, 128 (Tex.App.–Corpus Christi 1999, pet. denied); *see also Ashford Partners, Ltd. v. ECO. Res., Inc.,* 401 S.W.3d 35, 40 (Tex.2012).

▮ However, parties to a contract are "masters of their own choices." *Healthcare Cable Sys.,* 180 S.W.3d at 791. Contracting parties may determine the standard that will govern the attorney's fee award for a "prevailing party," rather than relying on the definition of that term in the case law. *See Intercont'l Grp. P'ship v. KB Home Lone Star LP,* 295 S.W.3d 650, 653 (Tex.2009). In such cases, it is the language of the contract, not the statute or case law, which governs. *Peterson Grp., Inc. v. PLTQ Lotus Grp., LP,* 417 S.W.3d 46, 60 (Tex.App.–Houston [1st Dist.] 2013, pet. denied); *see Intercont'l Grp.,* 295 S.W.3d at 653; *see also Epps v. Fowler,* 351 S.W.3d 862, 866 (Tex.2011).

**B. Discussion**

▮ On appeal, Kingsley argues that "prevailing party" was a defined term in the agreement. Kingsley argues that San Jacinto does not fall within the contract's definition of a "prevailing party" and is thus not entitled to attorney's fees. In response, San Jacinto urges us to apply the legal meaning that the term "prevailing party" has acquired in the case law. San Jacinto reasons that under this meaning, it is a "party" to the contract because its representative signed the final page of the agreement and undertook some obligations under the agreement. We agree with Kingsley.

The language of the agreement, when viewed as a whole, shows that the contract used the term "prevailing party" in a "technical or different sense" that is distinct from its ordinary legal meaning. *See Valence Operating Co.,* 164 S.W.3d at 662; *Peterson Grp.,* 417 S.W.3d at 60. The most pertinent portions of the agreement are excerpted below. From page one:

> This Agreement of Purchase and Sale (the "Contract") is made and entered into as of the Contract Date by KING'S CROSSING COUNTRY CLUB, LTD., a Texas limited partnership ("KCCC") OSO CREEK PROPERTIES, LC, a Texas limited liability company ("Oso") and JOWALL, INC. ("Jowall," collectively, KCCC, Oso, and Jowall are referred to as *"Seller"*), and between BASIL BECK and WENDY BECK (collectively, *"Buyer"*).

(Emphasis added). From page sixteen:

> 12.5 *Parties Bound.* This Contract shall be binding upon and inure to the benefit of *Seller and Buyer,* and their respective heirs, personal representatives, successors and permitted assigns, *but shall not inure to the benefit of another party.*
>
> . . . .

12.9 Attorney's Fees. If *either party* hereto shall be required to employ an attorney to enforce or defend the rights of such party hereunder, the prevailing party shall be entitled to recover its reasonable attorney's fees and costs.

(Emphasis added). Then, from page eighteen:

EXECUTED by Buyer on the 13th day of October, 2004.

[Signature of Wendy Beck]

EXECUTED by Seller on the 13th day of October, 2004.

[Signature of John Wallace, the representative of all three entities included in the collective term "Seller"]

Finally, page nineteen, the last page of the agreement, contained only this language:

AGREED AND ACCEPTED: this 14th day of October, 2004.

TITLE COMPANY: San Jacinto Title Company

The Title Company acknowledges receipt of this Contract, executed by Buyer and Seller, on the date shown above. The Title Company agrees to treat the subject transaction in confidence and will not disclose the terms or conditions of this Agreement to any party without the consent of Seller prior to closing and without the consent of Buyer after closing.

[Signature of a senior vice president for San Jacinto].

According to Kingsley, when taken together, these terms show that San Jacinto is not entitled to attorney's fees under the contract as a "prevailing party." We agree. First, section 12.5 expressly states that the agreement was to bind and benefit only two "parties:" the "Seller" and the "Buyer." The San Antonio Court of Appeals addressed a nearly identical situation and held that, where a real estate contract's definition of "party" included only the buy-er and seller of land, this controlled the meaning of "prevailing party," barring a realtor who also signed the contract from collecting attorney's fees. *Lesieur v. Fryar*, 325 S.W.3d 242, 252 (Tex.App.–San Antonio 2010, pet. denied); *see Arlington Home, Inc. v. Peak Envtl. Consultants, Inc.*, 361 S.W.3d 773, 783 (Tex.App.–Houston [14th Dist.] 2012, pet. denied) (same); *Williamson v. Guynes*, No. 10–03–00047–CV, 2005 WL 675512, at *1 (Tex.App.–Waco Mar. 23, 2005, no pet.) (same). Under the logic of *Lesieur*, the contract's definition of "party" favors the conclusion that "prevailing party" included only the buyer and seller of King's Crossing, and not the title company who also signed the agreement. *See* 325 S.W.3d at 252; *see also Ortega v. City Nat'l Bank*, 97 S.W.3d 765, 773 (Tex.App.–Corpus Christi 2003, no pet.).

Second, the language of the prevailing party provision uses the term "either party." The word "either" refers to "the one or the other of two." *Either*, MERRIAM-WEBSTER DICTIONARY, http://www.merriam-webster.com/dictionary/either (last visited July 13, 2016). San Jacinto's three-party interpretation would render the word "either" meaningless, whereas Kingsley's interpretation creates a greater measure of harmony between the agreement's provisions: "either" fits with the definition of the two "parties bound" just a few sentences earlier—the "Seller" and the "Buyer." *See Coker*, 650 S.W.2d at 393. Other provisions in the agreement reinforce this interpretation. For instance, the agreement provides that in the event of a default by the buyer, the seller has a right to rescind the agreement, in which case "*neither* party hereto shall have any further rights or obligations hereunder ...." (Emphasis added). The seller has a similar right of rescission in the event of a default by the buyer. Likewise, a provision on

page twelve, which allocates the costs of closing the transaction, provides that "each party is responsible for paying" certain categories of costs. However, no categories of costs are assigned to San Jacinto, which suggests that San Jacinto was not intended to be included in the phrase "each *party*." (Emphasis added).

Third, San Jacinto's obligations were in a different form and of a lesser magnitude than the obligations of the buyer and seller. *See Lesieur*, 325 S.W.3d at 252 (emphasizing that the realtor had limited obligations under the contract and signed to different language on a different page than the buyer and seller). The buyer and seller agreed to a purchase price of $2.65 million in exchange for a sizeable country club and golf course; the agreement included a detailed allocation of risks, transaction costs, and responsibilities as between the buyer and seller. By comparison, San Jacinto's consideration was not specified, and its obligations were undoubtedly more limited. The buyer and seller also agreed to speci-

fied remedies in the event of default—including specific performance or the forfeiture of a $10,000 earnest money deposit—but the agreement did not specify any remedy for San Jacinto in the event of default. Finally, whereas both buyer and seller signed on the same page that they had "executed" the agreement,[2] San Jacinto signed on a different page and signified that it "agreed and accepted" the agreement.[3] We presume that this differing choice of words had some significance. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 240 (Tex.2003).[4]

Based on these considerations, we agree with Kingsley's interpretation of the attorney's fees provision of the agreement. Neither San Jacinto nor Scott were "parties," as that term is distinctively used in the prevailing party provision at issue here. *See Intercont'l Grp.*, 295 S.W.3d at 653; *Peterson Grp.*, 417 S.W.3d at 60. Thus San Jacinto and Scott were not entitled to attorney's fees under the agreement.[5] We sustain Kingsley's first issue.

2. This term has been defined as "to make a legal document valid by signing; to bring a legal document into its final, legally enforceable form." *Mid–Continent Cas. Co. v. Glob. Enercom Mgmt., Inc.*, 323 S.W.3d 151, 157 (Tex.2010) (quoting *Execute*, BLACK'S LAW DICTIONARY (8th ed. 2004)) (editorial marks omitted).

3. The terms "agreed and accepted" can be read as corresponding only with the limited obligations described on the final page: that San Jacinto "agrees to treat the subject transaction in confidence" and "acknowledges receipt."

4. Finally, as a matter of somewhat related policy, we note that the Legislature did not favor an award of attorney's fees in disputes concerning title insurance contracts. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 38.006(1) (West, Westlaw through 2015 R.S.) (excluding title insurance suits from the types of contract disputes that are eligible for statutory attorney's fees).

5. San Jacinto also raises equitable estoppel, claiming that Kingsley's position on appeal is inconsistent with its position in the trial court. San Jacinto contends that when Kingsley sued for breach of contract, it impliedly recognized that San Jacinto was a party to the contract. San Jacinto argues that Kingsley must now be estopped from taking the inconsistent position that San Jacinto was not a "prevailing party" under the agreement. *See Glattly v. Air Starter Components, Inc.*, 332 S.W.3d 620, 639 (Tex.App.–Houston [1st Dist.] 2010, pet. denied). The elements of equitable estoppel arising from inconsistent positions taken in judicial proceedings are (1) a party takes clearly inconsistent positions in the same or separate proceedings; (2) the position first asserted was successfully maintained or upheld; (3) the other party relied on the position first asserted; (4) adoption of the later position would result in injury or prejudice to the adverse party; and (5) where more than one action is involved, there is an identity of parties. *In re Estate of Loveless*, 64 S.W.3d 564, 577–78 (Tex.App.–Texarkana

## III. Exclusion of Expert Testimony

By its second issue, Kingsley contends that the trial court committed reversible error in excluding certain testimony from Kingsley's expert witness Robert Philo. According to Kingsley's offer of proof, Philo intended to testify on the letter's statement that "a re-plat of the subject property would require city council approval" and that Scott would oppose the re-plat. Philo testified that this statement was false because the city council did not have the right to approve platting as a discretionary matter. Rather, the city council only had the power to review appeals of determinations made by the city's planning committee, which was responsible for reviewing proposed plats for routine compliance matters such as minimum street width. The city council could only reverse the planning committee if (a) the developer or the city manager appealed the planning committee's decision and (b) the planning committee failed to follow city ordinances on these routine matters. Philo testified that he reached this conclusion based on a review of the Uniform Development Code, a Corpus Christi zoning ordinance, the city's municipal charter, and review of many similar documents from other municipalities.

San Jacinto objected to this testimony, arguing that Philo had previously testified

he would not base his opinion on Corpus Christi laws. According to San Jacinto, Kingsley was required to supplement discovery in order to cure this omission, but had not done so. San Jacinto warranted that it was prejudiced, claiming that if Philo's reliance on these ordinances had been properly disclosed, San Jacinto would have re-deposed him. The trial court agreed and prevented Philo from testifying about the authority of the Corpus Christi City Council to approve or disapprove of proposed platting.

On appeal, Kingsley argues that Philo had never said he would not rely on Corpus-specific law, only that, at the time of his deposition years before trial, he had not reviewed Corpus's ordinances. Kingsley maintains that it was not required to produce all laws pertinent to the case as part of its discovery obligations. Kingsley also argues that, in its responses to requests for disclosure, it satisfied any discovery obligations by reporting the general substance of Philo's testimony: that the "Letter contains false statements. Specifically ... any re-plat of the Property would not require City Council approval such that City Council members are given any discretion in the approval process." Finally, Kingsley complains of inconsistent treatment, arguing that two of appellees' witnesses were allowed to testify on these

2001, no pet.). "The burden of proving an estoppel and the essential elements thereof rests on the party asserting it, and the failure to prove any one or more of the elements is fatal." *Glattly*, 332 S.W.3d at 639 (citing *Barfield v. Howard M. Smith Co.*, 426 S.W.2d 834, 838 (Tex.1968)).

San Jacinto has failed to prove multiple elements of equitable estoppel. First, as our discussion shows, the term "prevailing party" may have a general meaning according to the case law or a distinctive meaning according to contractual usage. *See Lesieur v. Fryar*, 325 S.W.3d 242, 252 (Tex.App.–San Antonio 2010, pet. denied); *see also Peterson Grp., Inc. v.*

*PLTQ Lotus Grp., LP*, 417 S.W.3d 46, 60 (Tex. App.–Houston [1st Dist.] 2013, pet. denied). Because the same phrase has two distinct potential meanings, it is not "clearly inconsistent" to impliedly argue for party status under one meaning, but argue for non-party status under another. *See Glattly* 332 S.W.3d at 639 (quoting *Loveless*, 64 S.W.3d at 577–78). Moreover, San Jacinto has not provided this Court with a record showing reliance, prejudice, or that Kingsley's earlier position was "successfully maintained or upheld." *See id.* Thus, San Jacinto has not met its burden of proving each element of equitable estoppel. *See id.*

ordinances even though San Jacinto, like Kingsley, did not disclose the specific laws upon which their expert witnesses would rely.

## A. Standard of Review and Applicable Law

An appellate court reviews a trial court's determination to exclude or limit expert testimony pursuant to an abuse of discretion standard. *K–Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex.2000). The trial court abuses its discretion only if it acts without regard for guiding rules or principles. *U–Haul Intern., Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex.2012).

To prevail on a business disparagement claim, a plaintiff must establish that (1) the defendant published false and disparaging information about it, (2) with malice, (3) without privilege, (4) that resulted in special damages to the plaintiff. *Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 170 (Tex.2003).

If a party learns that its written discovery responses regarding a testifying expert were or have become incomplete or incorrect, the party must supplement the response, unless the additional or corrective information has been made known to the other parties. TEX. R. CIV. P. 193.5, 195.6. A party must also supplement incomplete or incorrect deposition testimony by a retained expert, but only with regard to the expert's mental impressions or opinions and the basis for them. *Id.* 195.6. When an expert changes his opinion about a material issue after being deposed, the party must supplement discovery. *Red Sea Gaming, Inc. v. Block Invs. (Nev.) Co.*, 338 S.W.3d 562, 572 (Tex.App.–El Paso 2010, pet. denied); *see Aluminum Co. of Am. v. Bullock*, 870 S.W.2d 2, 4 (Tex.1994); *Collins v. Collins*, 904 S.W.2d 792, 801 (Tex. App.–Houston [1st Dist.] 1995), *writ denied*, 923 S.W.2d 569 (Tex.1996).

However, "[t]he discovery rules do not prevent experts from refining calculations and perfecting reports through the time of trial." *Exxon Corp. v. W. Tex. Gathering Co.*, 868 S.W.2d 299, 304 (Tex.1993). The duty to supplement "require[s] that opposing parties have sufficient information about an expert's opinion to prepare a rebuttal with their own experts and cross-examination, and that they be promptly and fully advised when further developments have rendered past information incorrect or misleading." *Id.*

## B. Discussion

We find many, if not most, of Kingsley's arguments to be persuasive. For instance, we agree that there was no change in Philo's "opinion about a material issue;" rather, his opinion was made known through requests for disclosure, was further explained at his deposition, and remained consistent through the time of trial. *See Red Sea Gaming*, 338 S.W.3d at 572; *Aluminum Co.*, 870 S.W.2d at 4. Likewise, we agree that Philo did not say, during his deposition years before trial, that he would never rely upon Corpus Christi ordinances, only that he had not reviewed them prior to the deposition. It is somewhat implausible for San Jacinto to claim it could not fairly anticipate that Philo would review Corpus Christi ordinances in the intervening years, given his well-disclosed intention to testify on the legal authority of the Corpus Christi City Council, and also given San Jacinto's preparedness to present two witnesses on this issue. *See, e.g., City of Alton v. Sharyland Water Supply Corp.*, 277 S.W.3d 132, 145 (Tex.App.–Corpus Christi 2009), *rev'd in part on other grounds*, 354 S.W.3d 407 (Tex.2011). Finally, we cannot say that Kingsley had a duty, per se, to disclose all law applicable to the council's authority,

given that discovery is geared toward the gathering of evidence rather than law. *See* Tex. R. Civ. P. 192.3.

However, that we might have decided the issue differently is not of consequence. *See Perry Homes v. Cull*, 258 S.W.3d 580, 602 (Tex.2008) ("The test for abuse of discretion is not whether, in the opinion of the reviewing court, the trial court's ruling was proper, but whether the trial court acted without reference to guiding rules and principles."). Here, it is evident that the trial court acted in accordance with the guiding principle of Texas Rule Civil Procedure 195.6, which provides that a party must supplement incomplete deposition testimony by a retained expert with regard to the bases of his opinions. *See* Tex. R. Civ. P. 195.6. At least in a technical sense, Kingsley failed to supplement the incomplete basis of Philo's opinions, omitting his reliance on Corpus Christi ordinances. *See id.* The trial court excluded Philo's testimony only as to this basis, and did not do so arbitrarily.

Moreover, when the trial court seemed inclined to sustain San Jacinto's objection, Kingsley did not show either good cause or an absence of surprise and prejudice to the other party, which was its burden under such circumstances. *See* Tex. R. Civ. P. 193.6; *Fort Brown Villas III Condo. Ass'n, Inc. v. Gillenwater*, 285 S.W.3d 879, 882 (Tex.2009). We thus cannot conclude that the trial court abused its discretion by preventing Kingsley's expert from testifying as to city council's authority based on local law. *See Perry Homes*, 258 S.W.3d at 602. We overrule Kingsley's second issue.

## IV. Conclusion

We reverse the portion of the judgment awarding attorney's fees and render judgment that appellees take nothing as to attorney's fees. We affirm the judgment of the trial court in all other respects.

Dissenting Opinion by Justice Perkes.

## Dissenting Opinion by Justice Perkes

I respectfully dissent with the majority's holding on issue one. I believe that appellee San Jacinto was a party to the agreement and, as the prevailing party in the underlying suit, was entitled to attorney's fees. Therefore, I would affirm the trial court's award of attorney's fees.

### I. Attorney's Fees

The majority correctly states the standard of review and applicable law. However, I disagree with the majority's construction of the agreement to which San Jacinto was a signatory. In considering the entire agreement and harmonizing its provisions, I would conclude that San Jacinto is a party to the agreement and covered by the attorney's fee provision.

### A. San Jacinto Is a Party to the Contract

#### 1. Non-Disclosure Provision

A San Jacinto representative signed the agreement on the last page of the agreement as follows:

AGREED AND ACCEPTED: this 14th day of October, 2004.

TITLE COMPANY: San Jacinto Title Company

The Title Company acknowledges receipt of this Contract, executed by Buyer and Seller, on this date shown above. The Title Company agrees to treat the subject transaction in confidence and will not disclose the terms or conditions of this Agreement to any party without the consent of Seller prior to closing and without the consent of Buyer after closing.

[Signature of a senior vice president for San Jacinto].

Traditionally, the presence or absence of signatures on a contract is relevant in determining whether the contract is binding on the parties. *In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869, 876 (Tex.App.–El Paso 2005, orig. proceeding); *In re Bunzl USA, Inc.*, 155 S.W.3d 202, 209 (Tex.App.–El Paso 2004, orig. proceeding); *see also Rachal v. Reitz*, 403 S.W.3d 840, 845 (Tex. 2013) ("Typically, a party manifests its assent by signing an agreement."); *Baylor Univ. v. Sonnichsen*, 221 S.W.3d 632, 635 (Tex.2007) ("Evidence of mutual assent in written contracts generally consists of signatures of the parties and delivery with the intent to bind.").

The language "AGREED AND ACCEPTED" follows the body of the agreement and is placed before the non-disclosure language, which indicates that San Jacinto is assenting to the terms of the entire agreement. Further, the agreement imposes numerous obligations and responsibilities upon San Jacinto including expressly defining San Jacinto as the "Title Company." Section 3.2 requires San Jacinto to serve as the escrow agent for the earnest money deposit and imposes several obligations upon San Jacinto in connection with handling the earnest money deposit. Section 4.1 obligates San Jacinto to issue a title commitment to the buyers. Section 4.5 requires San Jacinto to issue an Owner's Title Policy to the buyers. Finally, sections 9.1 and 9.2 place a duty upon San Jacinto to disburse the earnest money in the event of default.

The non-disclosure provision must not be viewed in isolation, to the exclusion of the provisions imposing obligations upon San Jacinto. *See Greater Hous. Radiation Oncology, PA v. Sadler Clinic Ass'n, PA*, 384 S.W.3d 875, 886 (Tex.App.–Beaumont 2012, pet. denied) ("We do not view the contract's provisions in isolation but construe it as a whole."). Construing the agreement as a whole, I would conclude that San Jacinto was a party to the entire agreement, not just the isolated non-disclosure provision. *See id.*; *see also Garcia v. Bank of Am. Corp.*, 375 S.W.3d 322, 333 (Tex.App.–Houston [14th Dist.] 2012, no pet.) (explaining that regardless of whether an escrow agent owes a fiduciary duty, the duties of the agent are limited and defined by the escrow agreement itself).

### 2. Section 12.5

I do not believe the language in section 12.5 of the agreement supports a contrary interpretation. That section provides that the agreement "is binding upon and inure[s] to the benefit of the Seller and Buyer ... but shall not inure to the benefit of another party."

"In discerning the parties' intent, 'we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.'" *El Paso Field Servs., LP v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 805 (Tex. 2012) (quoting *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex.2011)). In considering the entire agreement, I believe that section 12.5's reference to "another party" should be construed as excluding non-signatory third parties from the benefits and obligations of the agreement, not San Jacinto—a signatory with multiple obligations under the agreement. A contrary interpretation—one that binds only buyer and seller—would render meaningless the multiple provisions of the agreement which impose responsibilities upon San Jacinto. *See id.*

### B. San Jacinto Is Entitled to Attorney's Fees

As a party to the contract, San Jacinto was entitled to attorney's fees as a prevail-

ing party in the underlying action. Section 12.9 of the agreement provides as follows: "If either party hereto shall be required to employ an attorney to enforce or defend the rights of such party hereunder, the prevailing party shall be entitled to recover its reasonable attorney's fees."

As noted by the majority, with respect to an award of attorney's fees, case law defines the term "prevailing party" as referring to a party who successfully prosecutes an action or successfully defends against an action on the main issue. *Pegasus Energy Grp., Inc. v. Cheyenne Petroleum Co.*, 3 S.W.3d 112, 128 (Tex.App.–Corpus Christi 1999, pet. denied); *see also Ashford Partners, Ltd. v. ECO Res., Inc.*, 401 S.W.3d 35, 40 (Tex.2012). While the attorney's fees provision purports to apply to "either party'" to the agreement, the provision does not limit recovery of attorney's fees to suits between the buyer and seller. San Jacinto, a party to the contract, successfully defended the underlying action, and was therefore a prevailing party entitled to recover its reasonable attorney's fees.

The cases cited by the majority are distinguishable as they all pertain to real estate brokers who were not parties to the contract. In *Lesieur v. Fryar*, a real estate broker signed only a provision regarding the ratification of the broker's fee, thereby obligating her to pay three percent of the total sales price to Lesieur's broker at closing. 325 S.W.3d 242, 252 (Tex.App.–San Antonio 2010, pet. denied). In the present case, as discussed above, a representative of San Jacinto, a title company, signed expressing San Jacinto's assent to the entire agreement. Further, the contract in *Lesieur* contained a paragraph titled "BROKERS' FEES" stating, "All obligations of the parties for payment of brokers' fees are contained in a separate written agreement." *Id.* at 253. The agreement

in this case contains no such provision referencing a separate agreement with San Jacinto.

In *Arlington Home, Inc. v. Peak Environmental Consultants, Inc.*, the court framed the issue as follows: "whether the term 'party' in the attorney's fees provision is limited to the parties identified and defined by the contract or whether the term includes persons who were not parties to the contract but who were parties in a legal proceeding related to the agreement." 361 S.W.3d 773, 783 (Tex.App.–Houston [14th Dist.] 2012, pet. denied). The court then determined that the real estate broker was not a party to the contract and, therefore, was not entitled to attorney's fees. Similarly, in *Williamson v. Guynes*, the court held that a real estate broker was not entitled to attorney's fees under an earnest money contract where "[t]here [was] nothing in the contract suggesting the buyer and seller intended the word 'party' in the attorney's fees provision to include non-parties to the contract." No. 10–03–00047–CV, 2005 WL 675512, at *1 (Tex.App.–Waco Mar. 23, 2005, no pet.) (mem. op.). Unlike the real estate brokers in the above cited cases, San Jacinto served as an escrow agent under the agreement with multiple obligations created by the contract.

## II. Conclusion

San Jacinto was a party to the agreement and was entitled to attorney's fees as the prevailing party. For the foregoing reasons, I respectfully dissent.